NUMBER 13-06-00547-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


TEXAS STATE BOARD OF DENTAL EXAMINERS, Appellant,


v.
 


MISTY J. BROWN, D.D.S., Appellee.

 


On appeal from the 126th District Court 


of Travis County, Texas.


 


O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Benavides 


 Opinion by Justice Rodriguez



 This is an appeal from a district court's reversal of a sanctions order in a contested
case hearing under the Texas Administrative Procedure Act (APA). (1) See generally Tex.
Gov't Code Ann. §§ 2001.001-.902 (Vernon 2008); see also id. § 2001.003 (defining
"contested case" as "a proceeding . . . in which the legal rights, duties, or privileges of a
party are to be determined by a state agency after an opportunity for adjudicative hearing"). 
By eight issues, appellant, the Texas State Board of Dental Examiners (Board), contends
that it, not the Administrative Law Judge (ALJ), has the authority to determine whether
sanctions should be imposed against appellee, Misty J. Brown, D.D.S.; (2) that there is
substantial evidence to support the Board's findings and the restitution ordered; and, that
the Board properly deleted certain of the ALJ's findings of fact and conclusions of law and
articulated its reasons for doing so. By one issue on cross appeal, Dr. Brown contends
that the doctrine of res judicata applies. We reverse and render.

I. Background

 On April 29, 2003, Dr. Brown's dental license was temporarily suspended by order
of the Board's Executive Committee. On June 20, 2003, the Board and Dr. Brown entered
into an agreed settlement order (ASO) to resolve issues in dispute at that time. The ASO
imposed a ten-year suspension period, probated except for two separate four-month
periods during which time Dr. Brown was not to practice dentistry, and assessed $10,000
in fines. It required, among other things, that Brown participate in a mentoring and
monitoring program with a dentist approved by the Board Secretary and that she
participate in the Texas Dental Peer Assistance Program. It also provided that if Brown
violated any of the terms of the ASO, the Board would initiate proceedings to revoke her
license.

 On October 16, 2003, the Board filed a complaint against Dr. Brown with the State
Office of Administrative Hearings (SOAH). See Tex. Gov't Code Ann. § 2003.021 (Vernon
2008). On May 18, 2004, the Board filed an amended complaint asserting that, among
other things, Dr. Brown violated the ASO by (1) performing dental acts on patient C.R. on
or about June 3, 2003, while her license was suspended; (2) receiving remuneration from
dentistry while her license was suspended; (3) failing to participate in a mentoring program
with an approved licensed dentist; and (4) failing to participate in the Board's peer
assistance program protocols, including the signing of a participation and monitoring
agreement. The Board also complained that Dr. Brown (1) conducted herself dishonorably
toward E.B., a minor dental patient, and A.B., the minor patient's mother; (2) failed to
make, keep, and maintain dental records on E.B.; and (3) allowed her assistants to perform
non-delegable dental work on T.M.

 After a three-day contested trial, convened by the SOAH with an ALJ presiding, see
id. § 2003.042 (Vernon 2008), the ALJ recommended, in her Proposal for Decision (PFD),
that Dr. Brown not be subjected to any additional sanctions. See id. § 2003.042(6). The
ALJ based her recommendation on the following relevant conclusions that were, in turn,
based on her findings of fact not recited here:

 4. Based on the findings of fact, while her license was suspended, Dr.
Brown did not practice dentistry nor receive remuneration from the
practice of dentistry, as the practice of dentistry is defined in Tex.
Occ. Code ch. 259 et seq.

 

 5. Based on the findings of fact, Dr. Brown did not violate the terms of
her Agreed Settlement Order.

 

 6. Based on the findings of fact, [the Board] Staff prevented Dr. Brown
from complying with the terms of her Agreed Settlement Order . . . .

 

 7. Based on the findings of fact, Dr. Brown failed to keep adequate
dental records on one patient in violation of 22 Tex. Admin. Code §
108.8.

 

 8. Based on the findings of fact, Dr. Brown did not violate the minimum
standard of care with respect to the treatment of T.M.'s teeth under
Tex. Occ. Code ch. 258, and 22 Tex. Admin. Code § 108.7.

 

 9. Based on the findings of fact, Dr. Brown impermissibly delegated
dental work to a non-dentist in one instance, in violation of Tex. Occ.
Code §§ 259.001, 259.008(3), 22 Tex. Admin. Code §§ 108.1(3),
114.1.


 . . .

 

 11. Based on the findings of fact, Dr. Brown did not commit dishonorable
conduct under 22 Tex. Admin. Code §108.9.

 

 . . .


 13. Based on the findings of fact and conclusions of law, the ALJ finds
that no sanctions should be imposed against Dr. Brown for the
violations in this case.


 At a public meeting, after considering the PFD, the Board declined to accept the
ALJ's recommendation. The Board deleted some ALJ findings and disregarded others. 
It also deleted ALJ conclusions of law 4, 5, 6, 10, and 13. And, in its final order signed May
9, 2005, the Board imposed additional sanctions. By its order, the Board suspended the
dental license of Dr. Brown for fifteen years, probated for the entire period, assessed a
$20,000 administrative fine, and ordered restitution to one patient in the amount of $1,805. 
The Board again ordered Dr. Brown to participate in a designated peer assistance program
for the duration of the Board's order.

 Dr. Brown sought judicial review in district court. See Tex. Gov't Code Ann. §
2001.171; Tex. Occ. Code Ann. § 263.009 (Vernon 2004) ("A person aggrieved by a
decision of the board under this chapter is entitled to appeal as provided by Chapter 2001,
Government Code."). Upholding the ALJ's PFD, the district court reversed and remanded
the Board's order. The Board appeals from the final judgment of the district court. See
Tex. Gov't Code Ann. § 2001.145.

II. Authority to Sanction

 By its first and second issues, the Board generally contends that it, not the ALJ, is
the ultimate decision maker concerning sanctions, even when the ALJ's disciplinary
recommendation is set out as a conclusion of law rather than as a recommendation. It also 
argues that section 2001.058(e) is not implicated in this case, but if it is, the Board appears
to argue that it complied with the requirements to provide a "specific reason and legal
basis" for the change. See id. § 2001.058(e).

A. Agency or ALJ

 "[T]he choice of penalty is vested in the agency, not in the courts." Sears v. Tex.
State Bd. of Dental Exam'rs, 759 S.W.2d 748, 751 (Tex. App.-Austin 1988, no pet). "The
agency is charged by law with discretion to fix the penalty when it determines that the
statute has been violated." Id. (citing Firemen's & Policemen's Civil Serv. Comm'n v.
Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1984)). Thus, the Board "is not required to give
presumptively binding effect to an ALJ's recommendation regarding sanctions in the same
manner as with other findings of fact and conclusions of law." Granek v. Tex. State Bd.
of Med. Exam'rs, 172 S.W.3d 761, 781 (Tex. App.-Austin 2005, pet. denied). The mere
labeling of a recommended sanction as a conclusion of law or as a finding of fact does not
change the effect of the ALJ's recommendation. See id. Therefore, we agree that the
Board, not the ALJ, is the decision maker concerning sanctions in this case.

 The Board also notes that although section 2001.058(f) provides that a state
agency, by rule, may grant authority to the ALJ to render a final decision, see Tex. Gov't.
Code Ann. § 2001.058(f), the Board has promulgated no such rule. Therefore, it contends
that section 2001.058(f) provides no basis for the ALJ to have been given final-decision-making authority regarding sanctions in this case. We agree that section 2001.058(f)
provides no such basis in this case.

B. Section 2001.058(e) Implicated


 The Board also asserts, in its first two issues, that it was not required to justify why
it disregarded the ALJ's penalty recommendation. It argues that because the
recommendation was not a conclusion of law, the agency should not have to justify its
alteration of the ALJ's recommendation under section 2001.058(e), especially when the
agency has not promulgated a rule under section 2001.058(f). See Tex. Gov't Code Ann.
§ 2001.058(e), (f). Under the facts of this case, we disagree.

 Section 2001.058(e) permits a state agency to change an ALJ's finding of fact or a
conclusion of law or vacate or modify an ALJ's order when the agency determines that (1)
the ALJ improperly applied or interpreted applicable law, agency rules or policies, a written
statement of applicable rules or policies, or prior administrative decisions; (2) the ALJ
based her decision on a prior administrative decision that is incorrect or should be
changed; or (3) a finding of fact contains a technical error that should be changed. Id. §
2001.058(e); see 22 Tex. Admin. Code Ann. § 107.51(a) (2008) (State Bd. of Dental
Exam'rs, Findings of Fact and Conclusions of Law). When doing so, "[t]he agency shall
state in writing the specific reason and legal basis for a change under this subsection." 
Tex. Gov't Code Ann. § 2001.058(e); see 22 Tex. Admin. Code Ann. § 107.51(b) (2008)
(State Bd. of Dental Exam'rs, Findings of Fact and Conclusions of Law).

 In Granek v. Texas State Board of Medical Examiners, the Board rejected the ALJ's
recommended penalty that was set out as two separate conclusions of law. 172 S.W.3d
at 781. Because the Board rejected the recommendation, the Austin court concluded
section 2001.058(e) was implicated. Id.; see Pierce v. Tex. Racing Comm'n, 212 S.W.3d
745, 752 (Tex. App.-Austin 2006, pet. denied) (holding that when the commission modified
the ALJ's penalty recommendation it complied with section 2001.058(e) by expressly
setting forth in its final order the reasons and legal basis for its modification; explaining
"that the ALJ had failed to properly apply or interpret applicable law, agency rules, and
written policies because her recommendation was inconsistent with the commission's
precedent regarding the enforcement policy and guidelines"); see also Grotti v. Tex. State
Bd. of Medical Exam'rs, No. 03-04-00612-CV, 2005 Tex. App. LEXIS 8279, *26-31 (Tex.
App.-Austin Oct. 6, 2005, no pet.) (mem. op.) (concluding that the Board complied with
section 2001.058(e) by stating the specific reason and legal basis for eliminating a finding
of fact characterized as a sanction recommendation; explaining that the recommendation
was too lenient to effectively punish the doctor for suffocating a patient even though the
patient was in the process of dying).

 In the present case, the ALJ chose to set out her sanction recommendation as a
conclusion of law. She identified it as such. The Board rejected the conclusion of law. We
conclude, therefore, as did the court in Granek, that by the Board's actions in disregarding
the ALJ's conclusion of law that set out her penalty recommendation, section 2001.058(e)
is implicated. (3) See Tex. Gov't Code Ann. § 2001.058(e). And,  we are not persuaded by
the Board's argument that only when a rule has been promulgated under section
2001.058(f) should the Board be required to justify why it disagreed with the
recommendation. The Board provides us with no authority, and we find none, that
supports this assertion.C. Compliance with Section 2001.058(e)

 Having concluded that 2001.058(e) is implicated in this case, we must, therefore,
determine whether the Board complied by providing a specific reason and legal basis for
rejecting the ALJ's sanction recommendation. See id. The Board asserts, throughout its
first and second issues, that because the ALJ found that Dr. Brown had two violations of
law and the Board adopted those violations in its final order, the Board had authority to
change the ALJ's recommendation of no penalties. Dr. Brown responds that the Board
cannot change the ALJ's conclusion of law regarding sanctions without referencing the
findings on which it is based. From these arguments, Dr. Brown is apparently arguing that
the Board did not comply with section 2001.058(e), while the Board is contending it did
comply. (4)

 In Granek, although the court ultimately concluded that a portion of the medical
board's explanation violated section 2001.058(e) because it was based on unproven
allegations and was arbitrary and capricious, the court concluded that the medical board
did provide a "'specific reason and legal basis' for its rejection of . . . the sanctions the ALJ
had recommended." Id. at 781-82. The medical board in Granek explained that the ALJ's
proposed conclusions of law were not conclusions but recommended sanctions and while
the ALJ may recommend a sanction, it is up to the medical board to determine appropriate
sanctions. Id. at 781. The medical board concluded that revocation of Granek's license
was the only sanction that would protect the public and elaborated regarding its reasons
for imposing that penalty. Id.

 In this case, the ALJ's conclusion of law 13 provided the following: "[b]ased on the
findings of fact and conclusions of law, the ALJ finds that no sanctions should be imposed
against Dr. Brown for the violations in this case." The Board disagreed with the ALJ's
sanction recommendation and rejected it. In its written reasons and legal bases for
deleting the ALJ's conclusion of law 13, the Board stated the following:

 The Board believes that disciplinary action is warranted in this matter based
solely upon the following Findings of Fact and Conclusions of Law:

 

 1. [Board] Finding of Fact Nos. 3, 6, 7 and 9, and Conclusion of Law
Nos. 1, 2, 3, 4, 5 and 6[ (5)] . . . . [and]


 

 2. ALJ Finding of Fact Nos. 9, 10 and 40, and ALJ Conclusion of Law
Nos. 7 and 9 . . . .[ (6)]


 The Board explained, in writing, that the disciplinary action was warranted and
identified the findings of fact and conclusions of law that it determined supported that
action. It is apparent that the Board's written explanation for changing the ALJ's
disciplinary recommendation implicates the ALJ's improper application of law--that the
imposition of additional sanctions was supported and that the Board, not the ALJ,
determines the penalty. See Tex. Gov't Code Ann. § 2001.058(e)(1); Sears, 759 S.W.2d
at 751. We conclude, therefore, that the Board provided a specific reason and legal basis
for the Board's actions and, thus, complied with section 2001.058(e). See Tex. Gov't
Code Ann. § 2001.058(e).

 Agreeing with the Board that it, not the ALJ, has the authority to determine sanctions
in this case, we sustain the Board's first and second issues on that basis. Moreover,
having concluded that section 2001.058(e) is implicated in this case, we also sustain the
first and second issues to the extent the Board is asserting it complied with section
2001.058(e) after rejecting the ALJ's sanction recommendation that had been set out as
a conclusion of law.III. Dishonorable Conduct By its third issue, the Board contends that there is substantial evidence--more than
a scintilla of evidence--to support the Board's finding that Dr. Brown's offer to show E.B.,
a minor patient, scars on her breasts was dishonorable. (7) It asserts that there is a
reasonable basis in the record for its conclusion that Dr. Brown committed dishonorable
conduct--conduct that the Board claims would support its sanction order.

A. Standard of Review This Court reviews the Board's final order under the substantial evidence rule. See
Tex. Gov't Code Ann. § 2001.174. "Substantial evidence means more than a mere
scintilla; thus, the evidence may preponderate against the agency's decision, yet still
amount to substantial evidence." Matthews v. Scott, 268 S.W.3d 162, 172 (Tex.
App.-Corpus Christi 2008, no pet.) (quoting Miller v. Houston Indep. Sch. Dist., 51 S.W.3d
676, 680 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) (citing Mireles v. Tex. Dep't of
Pub. Safety, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam))). Whether the Board's order is
supported by substantial evidence is a question of law which we review de novo. 
Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 562 (Tex. 2000); Sanchez v. Tex.
State Bd. of Med. Exam'rs, 229 S.W.3d 498, 511 (Tex. App.-Austin 2007, no pet.).

 Under the substantial evidence rule, we give significant deference to the agency in
its field of expertise. Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc., 665
S.W.2d 446, 452 (Tex. 1984). We presume that the agency's order is valid and that its
findings, inferences, conclusions, and decisions are supported by substantial evidence,
and the burden to prove otherwise is on the party challenging the decision. Id. at 453; see
Stratton v. Austin Indep. Sch. Dist., 8 S.W.3d 26, 30 (Tex. App.-Austin 1999, no pet.).
"[W]e will sustain an agency's finding if reasonable minds could have reached the same
conclusion," Hinkley v. Tex. Bd. of Med. Exam'rs, 140 S.W.3d 737, 743 (Tex. App.-Austin
2004, pet. denied) (citing Tex. State Bd. of Dental Exam'rs v. Sizemore, 759 S.W.2d 114,
116 (Tex. 1988)), even if the evidence actually preponderates against it. Sw. Pub. Serv.
Co./PUC v. PUC, 962 S.W.2d 207, 215 (Tex. App.-Austin 1998, pet. denied). We are
ultimately concerned with the reasonableness of the agency's order, not its correctness. 
See Sanchez, 229 S.W.3d at 511.

B. Applicable Law

 A dentist is called upon to conduct her practice on the highest plane of honesty,
integrity, and fair dealing. See 22 Tex. Admin. Code Ann. § 108.1 (2008) (State Bd. of
Dental Exam'rs, Prof'l Responsibility). A dentist is in violation of the Board's rules when
she engages in dishonorable conduct which includes, among other things, engaging "in
conduct that has become established through professional experience as likely to disgrace,
degrade or bring discredit upon him or her or the dental profession." Id. §108.9(6) (2008).

C. Analysis

 At the hearing before the ALJ, E.B. was asked if there were any behaviors that gave
her particular cause for concern. E.B. responded, providing the following testimony:

 One of the instances that I can recall extremely clear is on the third attempt
to do my veneer I had a temporary put on. And I was very upset with what
it looked like. It was very discolored. It was brown. And I was very
disappointed with it. I was crying. And Misty - Dr. Brown sat me on her lap
as if I were a child and proceeded to tell me about her breast cancer, which
was a well-known fact throughout the office because with the breast cancer
poster that she had on the wall. It wasn't a secret that she had breast cancer
and she proceeded to tell me about that and adjusted her wig, as if to
compare our stories. And I had this discolored tooth and she had breast
cancer, just trying to, I guess, console me, but I've never had anyone to sit
me on their lap and tell me this. She also offered to show my mother and I
her breast, just as if to compare, look, I have cancer; you have a brown
tooth. I can feel your pain, I guess. And I never had anyone offer to show
me their breast and I thought that was just ridiculous.

 At the same hearing, E.B.'s mother testified about Dr. Brown's conduct as follows:

 The third treatment that my daughter had, she was very upset because Dr.
Brown gave her a brown tooth, which was very upsetting with her. And Dr.
Brown tried to console her, which is fine, but then she said, you think you
have got something to cry about? Let me show you my breasts. And we
both said, oh no, no, it is fine. We don't want to see your breasts, thank you. 
We both thought it was very inappropriate.

 

 Finally, at the hearing, Dr. Brown responded as follows:

 Q You've heard the testimony of . . . E.B. and . . . A.B. that you offered
to show them your breasts. Did you do that?


 A No.


 Q Did you make a reference to you having had surgery?


 A No.


 Q Did you ever expose yourself to a patient?


 A No.

 Although Dr. Brown denied that she offered to show E.B. and A.B. her breasts, the
ALJ determined that E.B. and A.B. testified credibly regarding the incident and found that
Dr. Brown offered to show her breasts to E.B. and A.B. Nonetheless, in the following
analysis set out in the PFD, the ALJ noted that, under the circumstances, the offer,

 was not unprofessional or dishonorable conduct. Dr. Brown was talking with
her patient about the problems with her teeth and was attempting to console
her by showing her that other people have health issues as well. Dr. Brown's
offer to show E.B. and A.B. her breasts as a way of consoling the patient was
not conduct that is likely to bring disgrace or discredit on Dr. Brown or on the
dental profession. E.B. and A.B. are both female. Dr. Brown offered to show
them the results of breast surgery that had left her somewhat disfigured--just
as E.B. was somewhat disfigured because of her teeth. Therefore, the ALJ
finds that Dr. Brown's offer to E.B. and A.B. to show her breast scars was not
dishonorable or unprofessional conduct as defined by statute and rule.


The ALJ also wrote that "Dr. Brown had undergone breast surgery. Although she did not
have breast cancer, she indicated to several people that she did. Dr. Brown did have
breast disease and has been diagnosed with another form of cancer."

 The ALJ found that "Dr. Brown's offer to show E.B., a seventeen-year old girl, and
A.B., E.B.'s mother, the scars on her breasts from surgery was appropriate given the
circumstances and E.B.'s anger and frustration." The ALJ concluded that "Dr. Brown did
not commit dishonorable conduct."

 Disagreeing with this determination, the Board deleted the ALJ's finding and
conclusion regarding this behavior and explained, in its Written Reasons and Legal Bases
for Changing the Administrative Law Judge's Proposal for Decision, that (1) the ALJ failed
to properly apply and interpret agency rules regarding dishonorable conduct, (2) the ALJ's
determination would create an impermissible policy precedent, (3) it is appropriate to
establish a clear precedent that it is dishonorable for a dentist to offer to show a patient the
dentist's private body parts in the course of the practice of dentistry even if it is to console
the patient, and (4) Dr. Brown's offer to show a patient scars on her breasts to console the
patient constitutes conduct that is likely to disgrace, degrade and bring discredit upon a
dental licensee and the dental profession. See Tex. Gov't Code Ann. § 2001.058(e). The
Board set out in its own finding that "Dr. Brown's offer to show E.B., a seventeen-year old
girl, and A.B., E.B.'s mother, the scars on her breasts from surgery was not appropriate
and constitutes dishonorable and unprofessional conduct." In the Board's conclusion of
law, the Board concluded that "Dr. Brown committed dishonorable conduct" under chapter
22, section 108.9 of the administrative code. See 22 Tex. Admin. Code Ann. § 108.9(6)
(State Bd. of Dental Exam'rs, Dishonorable Conduct); see also Tex. Occ. Code Ann. §
263.002(a)(3) (Vernon 2004) (providing that the practice of dentistry in a manner that
constitutes dishonorable conduct is a ground for disciplinary action).

 Based on our review of record and giving significant deference to the Board in its
field of expertise, see Charter Med., 665 S.W.2d at 452, we conclude that reasonable
minds could have reached the same conclusion as that reached by the Board. See
Hinkley, 140 S.W.3d at 743. A reasonable mind might accept such relevant evidence as
adequate to support the Board's conclusion that Dr. Brown's offer to show E.B. and A.B.
the scars on her breasts from surgery was not appropriate; that the complained-of behavior
constituted dishonorable conduct. Accordingly, we conclude that there was substantial
evidence to support the Board's conclusion that Dr. Brown practiced dentistry in a manner
that constitutes dishonorable conduct as defined in section 108.9. See 22 Tex. Admin.
Code Ann. § 108.9(6). We sustain the Board's third issue.

IV. Inadequate Dental Records and Impermissible Delegation of Dental Work

 In addition to the dishonorable conduct finding that provides support for its
disciplinary determination, the Board argues that its decision is supported by the ALJ's
conclusions and findings that Dr. Brown failed to keep adequate dental records on one
patient and that she impermissibly delegated dental work to a non-dentist in one instance. 
The Board adopted these conclusions and findings.

 The ALJ based her conclusion that Dr. Brown allowed her non-dentist employees
to adjust occlusion on T.M.'s teeth on her finding that the Board met its burden of proof to
show that Dr. Brown allowed her assistants to perform non-delegable dental work on T.M. 
The ALJ wrote the following in her PFD:

 T.M. testified that Dr. Brown cemented crowns in her mouth, but that other
individuals in the office performed adjustments. T.M. described the people
who did the adjustments as hygienists. She indicated that these individuals
put the crowns in her mouth, had her bite down, then removed the crowns
and left the room to return shortly thereafter and recheck the bite. According
to T.M., the hygienist also filed the crowns and the opposing tooth. Dr.
Vinings testified that he believed from looking at the work in T.M.'s mouth
that it was possible someone other than a licensed dentist had performed the
work. Dr. Brown testified that she performed the work to grind the teeth
herself. T.M.'s chart also indicates that a dentist ground the teeth to make
them fit. The ALJ finds that T.M.'s testimony about the hygienists grinding
teeth inside her mouth was credible. The ALJ also finds that Dr. Brown's
testimony and the patient's chart are credible. The ALJ finds that it is likely
that both Dr. Brown and assistants adjusted T.M.'s teeth. Only dentists are
permitted to make adjustments to teeth in the mouth. Therefore, the ALJ
concludes that Dr. Brown improperly delegated an act that must be
performed by a dentist, namely the removal of tooth structure, to someone
other than a licensed dentist.


(Record citations omitted.)

 In addition, the ALJ based her conclusion that Dr. Brown failed to keep adequate
dental records on E.B. on her findings that E.B's chart contained neither a written review
of medical history, a medical exam, radiographs and findings, a treatment plan, or a written
informal consent nor an explanation why the chart was incomplete. The ALJ's analysis on
these findings and conclusion in her PFD set out the following:

 Dr. Brown contends that she maintained adequate records on E.B. but that
E.B. stole her chart after Dr. Brown told E.B. that she was going to document
E.B.'s inappropriate behavior in her chart. Dr. Brown admits that she
recreated E.B.'s chart after she discovered it was missing. She also admits
that the information in the recreated chart was not complete. The ALJ finds
that Dr. Brown did not maintain adequate dental records on patient E.B.

 

 The Board's rules establish the items that need to be included in a patient's
chart. The items include the name of the patient, vital signs, medical history,
radiographs, etc. E.B.'s chart, as Dr. Brown provided it to the Board was
missing most of these items. In addition to the items required to be included
in the chart, the rule indicates that if certain items are not included in the
chart, the chart must indicate an explanation as to why the item is not
included. In this case, Dr. Brown did not indicate in the chart why items were
not included. Therefore, the ALJ finds that Dr. Brown failed to keep
adequate patient records on E.B.


(Record citations omitted.) Dr. Brown does not challenge the ALJ's findings and
conclusions regarding the above violations.

 The Board has offered more than one ground as a basis for its decision. Based on
our de novo review, we conclude that the Board's disciplinary decision is supported by the
dishonorable conduct finding and the two violations found by the ALJ and adopted by the
Board. The Board's findings and conclusions are supported by substantial evidence. 
When an agency offers more than one ground as the basis for its decision, we will affirm
if we find substantial evidence supporting one ground even if all bases given would be
independently sufficient to support the decision. Tex. State Bd. of Med. Exam'rs v.
Scheffey, 949 S.W.2d 431, 436 (Tex. App.-Austin 1997, writ denied); see City of Corpus
Christi v. PUC, 188 S.W.3d 681, 695 (Tex. App.-Austin 2005, pet. denied). Noting that our
review is ultimately concerned with the reasonableness of the agency's order, not its
correctness, see Sanchez, 229 S.W.3d at 511, we could affirm the Board's order on this
basis.V. Restitution

 In its seventh issue, the Board contends that there is more than a scintilla of
evidence supporting restitution to patient, T.M. It also asserts that the district court erred
in reversing the award of restitution and that harm is not a factor to consider in determining
whether restitution should be paid.

A. Substantial Evidence to Support Order of Restitution

 As set out in our analysis of the Board's first and second issues, the ALJ clearly
analyzed, found, and concluded that Dr. Brown improperly allowed her assistants to
perform non-delegable dental work on T.M. See Tex. Occ. Code Ann. § 258.001 (Vernon
Supp. 2008), § 258.002 (Vernon 2004), § 259.008(3) (Vernon 2004); 22 Tex. Admin. Code
Ann. §§ 108.1(3), 114.1 (2008) (State Bd. of Dental Exam'rs, Permitted Duties). The Board
adopted ALJ finding 40 that "Dr. Brown allowed her non-dentist employees to adjust
occlusion on T.M.'s teeth" and ALJ conclusion 9 that "Dr. Brown impermissibly delegated
dental work to a non-dentist in one instance." Although the ALJ attributed no consequence
for this violation, we conclude that this is substantial evidence to support the Board's order
that Dr. Brown "shall pay restitution to patient T.M." Reasonable minds could have
reached the same conclusion--that Dr. Brown should pay restitution when she violated
statutes and rules by improperly allowing her assistants to perform non-delegable dental
work on T.M. See Sizemore, 759 S.W.2d at 116.

B. District Court Error The Board also contends that the district court erred by reversing the Board's award
of restitution. The district court's final judgment concluded the following:

 While the Board does have general authority to order restitution as part of its
powers in disciplining dentists who are placed on probation, that power is not
without boundaries. The Board is not empowered to make adjudicative
findings contrary to the ALJ's findings to support such restitution. The ALJ
found that Dr. Brown was not responsible for the problems that T.M. had with
her teeth, ALJ Findings Nos. 30-39, Conclusion No. 8. Therefore, the Board
erred in awarding restitution for T.M. in this case.


 The district court impliedly concluded that the Board made findings contrary to the
ALJ's findings and therefore, should have complied with section 2001.058(e) by providing
a written reason and basis for making contrary findings supporting restitution. See Tex.
Gov't Code Ann. § 2001.058(e). Apparently determining that the Board failed to comply,
the district court concluded that the Board erred in awarding restitution. We disagree with
this reasoning.

 In reversing the restitution award, the district court relied on the following ALJ
findings of fact:

 30. Dr. Brown suggested to T.M. that she wear a night guard to prevent
damage to her teeth.


 31. T.M. refused to wear the night guard, and her teeth cracked, causing
her pain.


 32. Dr. Brown treated T.M.'s pain and referred her to an endodontist for
root canals.


 33. T.M. did not return to Dr. Brown for the placement of crowns until over
one year after the root canals were performed.

 

 34. During the intervening year, T.M.'s teeth super-erupted, leaving little
clearance for crowns.

 

 35. T.M. did not complete Dr. Brown's treatment plan, thereby damaging
tooth number 15.

 

 36. There is no evidence in the record showing the condition of T.M.'s
teeth at or near the time the crowns were seated.

 

 37. The erosion into the dentin on tooth number 15 was caused by T.M.'s
continued bruxism.

 

 38. The flat crown on tooth number 19 was required due to T.M.'s
bruxism.

 

 39. The missing porcelain on tooth number 18 was due to T.M.'s bruxism.

The district court referenced ALJ conclusion of law 8 which provides that "[b]ased on the
findings of fact, Dr. Brown did not violate the minimum standard of care with respect to the
treatment of T.M.s teeth . . . ." These findings and the conclusion address the standard
of care that the ALJ concluded was not breached by Dr. Brown in her treatment of T.M.

 Section 2001.058 applies only when a state agency changes a finding of fact or
conclusion of law. Id. In this case, the Board did not make adjudicative findings contrary
to the ALJ's findings. Based on our review of the record, the Board's order of restitution
was based on the ALJ finding that Dr. Brown allowed a non-dentist employees to adjust
occlusion on T.M.'s teeth and the ALJ conclusion that Dr. Brown impermissibly delegated
T.M.'s dental work to a non-dentist in one instance, both of which were adopted by the
Board. We cannot conclude that the Board made findings and conclusions contrary to
those identified in the district court's final judgment. Therefore, the district court erred
when it reversed the Board's award of restitution.

C. Harm

 Dr. Brown asserts, in response to this issue, that there is no basis for the Board to
order restitution for non-delegable tasks because the dental care provided to T.M. did not
fall below the standard of care. However, Dr. Brown cites no authority, and we find none,
to support her argument.

 In this case, it is irrelevant that the ALJ found Dr. Brown did not violate the minimum
standard of care with respect to the treatment of T.M. Dr. Brown allowed her non-dentist
employee to adjust occlusion on T.M.'s teeth. She impermissibly delegated dental work
to a non-dentist, thereby violating the law. That violation of law, as interpreted by the
Board, is the basis for the award of restitution. See Tex. Occ. Code Ann. § 263.002
(Vernon 2004). And, as set out above, the agency, not the court, is charged by law with
discretion to fix the penalty when it determines that the statute has been violated. See
Sears, 759 S.W.2d at 751. Adopting the ALJ's finding that Dr. Brown allowed her non-dentist employees to adjust occlusion on T.M.'s teeth and her conclusion that Dr. Brown
impermissibly delegated dental work to a non-dentist, the Board properly based its order
of restitution on this violation. Harm, in this case, is not a factor to consider in determining
whether restitution should be paid. We sustain the Board's seventh issue.

VI. Board's Remaining Issues

 The Board's fifth, sixth and eighth issues raise contentions related to Dr. Brown's
practice of dentistry during her suspension. By its fourth issue, the Board argues that it
properly disregarded the ALJ's supporting findings of fact and properly deleted its
conclusion of law that the Board's staff prevented Dr. Brown from complying with terms of
her ASO, specifically her participation in a mentoring program and in the peer assistance
program. Having concluded, however, that the Board's final order is supported by
substantial evidence of at least three other violations that involve unrelated conduct, we
need not address these remaining issues because they are not dispositive of this appeal. 
See Tex. R. App. P. 47.4.

VII. Res Judicata

 By a single issue in her cross-appeal, Dr. Brown contends that the doctrine of res
judicata applies in this case. (8) She asserts that the allegations regarding disciplinary
matters that occurred in 2002--allegations that now form the basis of the present
disciplinary action--were addressed in the 2002 ASO. Because the allegations were
addressed in the ASO, Dr. Brown claims that they have been finally adjudicated or, with
the exercise of due diligence, should have been litigated in that earlier settlement
proceeding. The Board contends that res judicata does not apply because the ASO does
not qualify as a final adjudication.

A. Applicable Law and Standard of Review

 In Texas courts, the doctrine of res judicata prevents the relitigation of a claim or a
cause of action that has been finally adjudicated. State & County Mut. Fire Ins. Co. v.
Miller, 52 S.W.3d 693, 696 (Tex. 2001) (per curiam); Kaufman v. Comm'n for Lawyer
Discipline, 197 S.W.3d 867, 872 (Tex. App.-Corpus Christi 2006, pet. denied), cert.
denied, 128 S. Ct. 331 ( 2007). Res judicata also prevents litigation of related matters that,
with the use of diligence, should have been litigated in the earlier suit. Miller, 52 S.W.3d
at 696; Kaufman, 197 S.W.3d at 872. "The bar of a claim by res judicata requires proof
of the following elements: (1) a prior final judgment on the merits by a court of competent
jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action
based on the same claims that were raised or could have been raised in the first action." 
Ex parte Myers, 68 S.W.3d 229, 232 (Tex. App.-Texarkana 2002, no pet.) (citing Amstadt
v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996)).

 "The question whether res judicata applies in a given instance is a mixed question
of law and fact." Myers, 68 S.W.3d at 232. "When a matter involving both factual
determinations and legal conclusions is decided by the trial court, Texas appellate courts
generally use an abuse of discretion standard of review." Id. (citing Pony Express Courier
Corp. v. Morris, 921 S.W.2d 817, 820 (Tex. App.-San Antonio 1996, no writ) (per curiam)). 
However, when the parties do not dispute any factual determination upon which the res
judicata bar is based, as in this case, and the only issue presented for review involves a
purely legal determination, the proper standard of review is de novo. Id. (citing Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1990)). Therefore, we must determine, de novo,
whether there has been a final adjudication.

B. Analysis

 Dr. Brown's ASO included the following language:

 A mediated settlement conference was held in this case on June 10,
2003, at SOAH. . . .


 An agreement was reached during the mediation and pursuant to that
agreement, [Dr. Brown] wishes to waive further formal adjudicatory
proceedings. [Dr. Brown] voluntarily enters into the following Agreed
Settlement Order. [Dr. Brown], by signature below, acknowledges that [she]
fully understands the nature of the findings of fact and conclusions of law set
out herein, that [she] has been advised of the right to legal representation,
and that [she] has been given the opportunity to formally contest any Board
allegations in an adjudicatory proceeding.


The ALJ and the district court judge determined that the ASO was not a final adjudication
of all disciplinary matters that occurred in 2002, including the matters that form the basis
of the present disciplinary action.

 We agree that the proceeding that resulted in the signing of the ASO was in the
nature of a mediation, not a final adjudication. The parties arrived at a settlement; the
merits of the claims were not reached. There was no prior final judgment on the merits by
a court of competent jurisdiction. See Myers, 68 S.W.3d at 232. The present appeal is not
from the relitigation of a claim or a cause of action that was finally adjudicated or that
should have been litigated in an earlier suit. See Miller, 52 S.W.3d at 696. Thus, we
conclude that the issues about which Dr. Brown now complains were not finally litigated
and were not matters that, with the use of diligence, should have been litigated in an earlier
suit. See Miller, 52 S.W.3d at 696; Kaufman, 197 S.W.3d at 872. Dr. Brown did not
establish the element of "final adjudication," and, therefore, res judicata does not apply. 
We overrule Dr. Brown's sole issue brought in her cross-appeal.

VIII. Conclusion

 Accordingly, we reverse the judgment of the district court and render judgment
reinstating the decision of the Board.


 

 NELDA V. RODRIGUEZ

 Justice


Opinion delivered and filed 

this 2nd day of April, 2009.


1. This case was transferred from the Third Court of Appeals to the Thirteenth Court of Appeals as part
of the Texas Supreme Court's docket equalization program. See Tex. Gov't Code Ann. § 73.001 (Vernon
2005). We must decide the case in accordance with the precedent of the transferor court under principles
of stare decisis if our decision otherwise would have been inconsistent with the precedent of the transferor
court. See Tex. R. App. P. 41.3. We are not, however, aware of any conflict between the precedent of the
Austin court and the precedent of this Court on any issue relevant in this appeal. See id.
2. Misty J. Brown, D.D.S., was previously married and known as Dr. Staffel. Both names are used
throughout the record. For ease of reference we will refer to appellant as Dr. Brown.
3. We do not determine, under the facts of this case, whether 2001.058(e) is implicated when the Board
rejects an ALJ's disciplinary recommendation that is not set out as a conclusion of law.
4. We note that, in its brief, the Board states that "Dr. Brown correctly points out that the Board did not
'discuss' in its Final Order why it disagreed with the ALJ's penalty recommendation." However, the Board
provided written reasons and a legal basis for its decision to delete the ALJ's conclusion of law regarding
sanctions and extensively argues, on appeal, that it had support for its decision to disregard the ALJ's
recommendation. We, therefore, do not consider this statement as a concession on the part of the Board.
5. The Board's disciplinary determination was based on the following findings of fact and conclusions
of law made by the Board:


 BD[FOF] 3 ALJ Finding of Fact No. 11 lacks a minimal basis of rationality in light of the
evidentiary record. [Dr. Brown] is the sole shareholder of the stock in her
dental corporation. During her suspension, [Dr. Brown] hired temporary
dentists to practice dentistry and received the proceeds of insurance funds
from the temporary dentist's practice of dentistry. [Dr. Brown] violated the
terms of her (ASO) by practicing dentistry while her license was suspended.


 . . .


 BD[FOF] 6 Dr. Brown's employment of temporary dentists to work in her practice while
her license was actively suspended was an attempt to circumvent an order
of the [Board].

 BD[FOF] 7 Dr. Brown's employment of temporary dentists to work in her practice while
her license was actively suspended was a failure to exercise reasonable
diligence to prevent partners, associates or employees from engaging in
conduct that supported the practice of dentistry without a license.


 . . .


 BD[FOF]9 Dr. Brown's offer to show E.B., a seventeen-year old girl, and A.B., E.B.'s
mother, the scars on her breasts from surgery was not appropriate and
constitutes dishonorable and unprofessional conduct.


 . . .


 BD[C0L] 1 Based upon finding of fact No. 3 and ALJ findings of fact Nos. 9 and 10, Dr.
Brown practiced dentistry during her period of suspension, as the practice
of dentistry is defined by TEX. OCC. CODE § 251.003 (a)(4).


 BD[COL] 2 Based upon finding of fact Nos. 3, 6 and 7, and ALJ findings of fact Nos. 9
and 10, Dr. Brown attempted to circumvent an order of the [Board] in
violation of 22 Tex. Admin. Code §§108.1(1), 108.1(2) and 108.1(3).


 BD[COL] 3 Based upon finding of fact Nos. 3, 6 and 7, and ALJ findings of fact Nos. 9
and 10, Dr. Brown failed to exercise reasonable diligence to prevent
associates or employees from engaging in conduct that supported the
practice of dentistry without a license in violation of 22 Tex. Admin. Code §§
108.1(4) and 108.1(5).


 BD[COL] 4 Based upon finding of fact Nos. 3, 6 and 7, and ALJ findings of fact Nos. 9
and 10, Dr. Brown violated the terms of her ASO.


 BD[COL] 5 Based upon finding of fact No. 9, Dr. Brown committed unprofessional
conduct under TEX. OCC. CODE § 259.008.


 BD[COL] 6 Based upon finding of fact No. 9, Dr. Brown committed dishonorable
conduct under 22 TEX. ADMIN. CODE § 108.9.


(Citations to the record omitted.).
6. The Board's disciplinary action was also based on the following ALJ's findings of fact and conclusions
of law:


 ALJ[FOF] 9 Dr. Brown hired and paid temporary dentists to work in her practice while
her license was actively suspended.


 ALJ[FOF] 10 The temporary dentists received the money from their practice, minus the
cost of overhead and lab work.


 . . .


 ALJ[FOF] 40 Dr. Brown allowed her non-dentist employees to adjust occlusion on T.M.'s
teeth.


 . . .


 ALJ[COL] 7 Based on the findings of fact, Dr. Brown failed to keep adequate dental
records on one patient in violation of 22 TEX. ADMIN. CODE § 108.8.


 . . .


 ALJ[COL] 9 Based on the findings of fact, Dr. Brown impermissibly delegated dental
work to a non-dentist in one instance, in violation of TEX. OCC. CODE
§§258.001, 258.002, 259.008(3), 22 TEX. ADMIN. CODE §§108.1(3),
114.1.
7. The Board also concluded that Dr. Brown's conduct was unprofessional and appears to contend on
appeal that there is substantial evidence to support this conclusion. See Tex. Occ. Code Ann. § 259.008
(Vernon 2004). However, because of the disposition of this issue on the basis of dishonorable conduct, we
need not address this contention. See Tex. R. App. P. 47.4.
8. Dr. Brown also contends that the doctrine of collateral estoppel applies. However, her brief does not
contain a clear and concise argument for this contention, with appropriate citations to authorities and to the
record. See Tex. R. App. P. 38.1(i). Dr. Brown refers us to only one collateral-estoppel case, see Cont'l Can
Co. v. Marshall, 603 F.2d 590, 596 (7th Cir. 1979), that discusses collateral estoppel, and Marshall is more
favorable to the Board's position than her own. In Marshall, the court concluded that the "actually litigated"
requirement of the doctrine of collateral estoppel is generally satisfied if the parties to the original action
disputed the issue and the trier of fact resolved it. Id. Unlike the present case, in Marshall, there was a trier
of fact in the original proceeding, and the Marshall court ruled that the issue in dispute had been resolved by
the trier of fact. Id.